STAHL & ZELMANOVITZ
Joseph Zelmanovitz (JZ 0085)
Evan M. Newman (EN 2724)
747 Third Ave, Suite 33B
New York, New York 10017
*Attorneys for Plaintiff KWG Partners, LLC*

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ SEP 0 7 2010 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

KWG PARTNERS, LLC,

        Plaintiff,

    - against -

ADAM ZANGI a/k/a ASAF ZANGI
a/k/a/ OZZY ZANGI, MACIAS BENSIMHON
a/k/a DAVID GOLDSTEIN, VITALIY
ISIKOV a/k/a DICK HINDYAZ, ENVE WEB
DESIGN, and WWW.VIOLATIONMONITOR.COM,

        Defendants.
----------------------------------------------------------------x

Case No.

**10 - 4076**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ROSS, J.**

**GO, M.J.**

    Plaintiff KWG Partners, LLC, by its attorneys Stahl & Zelmanovitz, for its complaint

against defendants, alleges as follows:

## INTRODUCTION

    1.    This action arises from the fraud, breach of contract, misappropriation of

plaintiff's proprietary business and accounts and unauthorized hacking into plaintiff's computer

systems perpetrated by defendant Adam Zangi a/k/a Asaf Zangi a/k/a Ozzy Zangi ("Zangi")

together with his accomplices, the other defendants. Zangi masqueraded as a potential customer

of plaintiff in order to obtain access to plaintiff's system. He then used that limited access to

misappropriate plaintiff's web design and features, and to hack into plaintiff's system for the

purpose of stealing plaintiff's customer list, pricing data and other sensitive, proprietary and

confidential information.

2.     By this action, plaintiff seeks, *inter alia*, damages in an amount in excess of $600,000 to compensate plaintiff for the business it stands to lose through defendants' tortious conduct. Plaintiff also seeks an injunction ordering defendants to cease and desist their unauthorized access of plaintiff's computer system, their misappropriation of plaintiff's trade secrets (including its client list and pricing data), and their competing business built solely on the unauthorized access and misappropriation of plaintiff's proprietary communications, trade secrets, and electronic information, and to prevent further damage to KWG's business.

3.     In addition, because of the outrageous, unlawful and quasi (if not actually) criminal nature of defendants' misconduct, plaintiff seeks to recover from each defendant punitive damages in the amount of $2 million, so as to deter them and all others similarly inclined from repeating such conduct in the future.

## PARTIES

4.     Plaintiff KWG Partners, LLC ("KWG") is a New York limited liability company with its principal place of business located in Brooklyn, New York. There are three members of KWG: Chaim Krause ("Krause"), Yaakov Wurtzel ("Wurtzel") and David Gross ("Gross"). Krause resides in Brooklyn, New York; Gross resides in Queens, New York and Wurtzel resides in Passaic, New Jersey.

5.     Defendant Adam Zangi a/k/a Asaf Zangi a/k/a Ozzy Zangi ("Zangi") is an individual residing in Brooklyn, New York.

6.     Defendant Macias Bensimhon a/k/a David Goldstein ("Bensimhon") is a resident of Brooklyn, New York.

7.     Defendant Vitaliy Isikov a/k/a Dick Hindyaz ("Isikov") is a resident of Staten Island, New York.

8.     Upon information and belief, defendant Enve Web Design is an unincorporated business belonging to Isikov

9.     Defendant www.violationmonitor.com is the website and business name through which Zangi and Bensimhon operate their unlawful business.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1030, 18 U.S.C. § 2520, 18 U.S.C. § 2707 and pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over KWG's claims arising out defendants' violations of New York State law pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction, because those claims are joined with substantial and related claims under federal law.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11.     This action arises out of the transaction of business, commission of tortious injury, and other activities within the Eastern District of New York and elsewhere.  Defendants have committed within this judicial district the unlawful acts complained of herein, and are subject to the jurisdiction of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     KWG provides a violation monitoring service, known as "EmpowerNY," for property owners with buildings in New York City ("EmpowerNY").  Through its website, "empowerny.com," KWG provides paid users with up to the minute updates of any violations, repair orders and complaints lodged against their buildings by city agencies including the New

3

York City Department of Housing Preservation and Development ("HPD").

**Formation of KWG**

13.     KWG was formed in February 2009 by its three members, Krause, Wurtzel and Gross.

14.     Gross and Wurtzel have extensive experience in programming, web design and operations via the internet. In addition, Gross is a licensed attorney and Wurtzel is accomplished in the fields of animation and automation in both the media and financial industries. Krause has over a decade of experience managing properties in New York City. The success of KWG arises in large part from the unique collaboration of Krause's real estate expertise along with Gross and Wurtzel's technological expertise.

15.     Instead of launching the EmpowerNY website earlier with less features, KWG felt it would be better to wait until the software and service were fully developed. After over a year of time, effort and expense spent in developing the system, KWG launched EmpowerNY in June 2009. Prior to KWG's launch, there was no other violation monitoring service.

**The EmpowerNY System**

16.     A building owner with a building located in New York City that has a violation is under the affirmative duty to fix the violation and pay certain fines. A building subject to an emergency repair order means that the City has authorized approved contractors to repair the violation at a pre-determined rate, even without the owner's consent. Managing and addressing building violations takes up much time, money and effort of a property manager. Although tenants can complain directly to their building's management, many tenants telephone New York City's "311" phone number to complain about problems in their apartments. Each complaint is

4

logged into the City's computer system. However, the building's management is not formally informed of the complaint by the City until after the City investigates the complaint and finds a violation—causing the owner to incur substantial costs in repairs and fines. Oftentimes when the City inspects a property for a particular problem, it also discovers additional problems or violations at the building. The building's management cannot cure these additional violations because management does not know that a complaint was lodged and that the City will schedule an inspection.

17.    KWG's on-line service is designed to warn building management before the complaint snowballs into multiple violations, allowing management time to fix the problem before City inspectors appear. KWG's EmpowerNY system also monitors violation expiration dates and emergency repair orders.

18.    EmpowerNY employs custom written software that monitors the City's computer systems for certain data relating to KWG's customers and then immediately relays that data to the appropriate customer. KWG also tracks and organizes all the data it collects in a user-friendly format that is valuable for a building manager. Customers utilize the service through the e-mailed alerts along with information contained in a restricted access portion of the EmpowerNY website.

19.    In the year since launching the service, KWG has spent significant time, money and effort marketing the service and developing new features. Since launch, KWG's revenue has grown by almost 1000%.

20.    Because the market for potential customers is limited to New York City building owners, competition is vigorous. KWG spends much time and effort contacting potential clients

5

and introducing them to its product. KWG offers potential customers a limited trial-period so they can try the system and experience how it can assist them. During that trial period, the members of KWG spend significant time working with the potential customer and monitoring their usage to show the potential customer how the service can benefit its particular property.

## KWG'S Pricing Structure And Other Trade Secrets

21.     To remain competitive, KWG applies a proprietary and customized pricing structure for each customer. This customized approach is necessary because some customers have only one building with a few residential units to monitor while others have many buildings with thousands of units. The pricing structure was developed over the past months through trial and error. It is critical that KWG's pricing model remain secret because of the highly-competitive market and the fact that the difference in pricing among competitors often comes down to a few cents per apartment.

22.     The pricing structure, the customer list, and the rate charged to each of KWG's customers, along with the computer source code for KWG's software, are stored in a highly confidential area of KWG's computer system. Only the three members of KWG, along with a limited number of employees, have access to the customer list, source code and pricing information.

23.     It is critical that KWG's customer list and pricing information remain confidential. A party in possession of this information (like defendants) can offer a similar service to each of KWG's customers for just a few cents less, thereby ruining KWG's business.

## KWG's Website

24.     All potential customers are introduced to KWG's service through its specially

6

designed website located at EmpowerNY.com (the "Site").  Through the Site, customers are able to log-in to access their customized features and services.  Because of the competitive and specialized nature of this business, only legitimate customers are granted access to this non-public area of EmpowerNY.

25.     Potential customers are introduced to KWG's service either through direct solicitation from one of the three KWG members or another KWG salesperson, KWG's marketing materials, or by word of mouth. KWG's salespeople and website offer potential customers a free-trial to try out the system.

26.     Beyond the basic public information available on the website, no one is given access to the restricted portion of the system, without first obtaining permission from one of the three KWG members.  Only after determining that the potential customer is a legitimate New York City property owner and would need the service is the potential customer authorized to receive a username and password to access the restricted portion of the system.

27.     KWG stays ahead of its competitors through the constant production of new features and services.  For example, upon information and belief, KWG is the only system to seamlessly integrate a calendar on the customer's account page to show all relevant deadlines and expiration dates for the property.

**The Terms Of Use And Non-Disclosure Agreement**

28.     Before accessing the non-public area of the website for the first time, each customer (or trial customer) is presented with a copy of KWG's Terms of Use, which imposes certain obligations on users of KWG's service.  The customer is given the option of accepting the Terms of Use by digitally signing the document or declining to accept the terms.  If a

7

customer declines to accept the Terms of Use, the customer is not granted access to the service of the non-public website.

29.     In addition, when accessing the service for the first time, each customer (or trial customer) is presented with a Non-Disclosure Agreement in the same manner as the Terms of Use.

30.     The Terms of Use explicitly limit the customer's use of the service to its own internal business purpose. The customer also agrees to only allow its own employees access to the service. The Terms of Use also explicitly prohibit copying or reverse engineering the service and any underlying software or technology. In addition, the customer agrees expressly not to access the service for purposes of monitoring the system's performance or functionality or for any other competitive purpose. The Terms of Use also prohibit a customer from misrepresenting the customer's affiliation with another person or entity and falsely manipulating data.

31.     The Non-Disclosure Agreement similarly prohibits any misuse or reverse engineering of the service or underlying technology. The Non-Disclosure Agreement also explicitly obligates the customer to treat as confidential all "[p]ricing structures, service agreements and personal information stored on the EMPOWER NY servers."

**KWG's Introduction To Zangi**

32.     On August 3, 2010, based on a referral from SiteCompli, a competitor of KWG which claimed that it was not suited for the potential business, KWG's Krause contacted Zangi by email, asking how to reach him to discuss KWG's service. Zangi immediately responded with a phone number by which to reach him.

33.     Krause immediately called Zangi to discuss KWG's service and whether it would

8

be appropriate for his business needs. Zangi represented to Krause that Zangi was in the business of purchasing single-family homes, renovating them and quickly flipping them for a profit. After explaining some of the basic benefits of EmpowerNY, Krause offered a trial period to Zangi, which he accepted.

34.     For purposes of the trial period, Zangi provided KWG with the names and addresses of one single-family property to enter into the system.

35.     Zangi then accessed the service through the EmpowerNY website, set up his password, and accepted the Terms of Use and Non-Disclosure Agreement.

**Zangi's Misuse Of KWG's System**

36.     On or about August 19, 2010, while KWG was performing routine monitoring of the account, it was discovered that Zangi had added three new buildings to the system and used gibberish to refer to the names of the buildings, such as "asdasdasdasd" (which are incidentally the three letters directly adjacent to each other on a computer keyboard). A legitimate property manager generally would name the building with an identifying name (such as its address), so it could properly keep track of the violations logged at the building. Moreover, two of the buildings were named with the same exact gibberish, which made it impossible for Zangi to legitimately monitor the violations in each building separately.

37.     KWG also discovered that the buildings added by Zangi were large multiple unit buildings, which were far different than the single-family homes Zangi had represented to KWG. In addition, the HPD registration information for each building showed different agent and contact information, which is uncommon for buildings ostensibly owned or managed by the same person. A search of the HPD records and the New York City "ACRIS" real property

records database revealed that these new buildings were, in fact, *not owned by Zangi.*

38.    After further investigation, it was discovered that Zangi was accessing the EmpowerNY system between three to eight times every day.  Building owners with even hundreds of apartment units and multiple buildings in KWG's system typically access the system, at most, once a day and usually far less.

39.    KWG learned of additional information which made it apparent that Zangi was not accessing the system as a legitimate user for his property management business, in breach of the Terms of Use: (1) Zangi was accessing the system to view and test all of KWG's features; in fact, one of Zangi's buildings was named "test"; (2) One of the IP addresses Zangi was using to access KWG system was actually a proxy server based in England, which is employed to conceal the identity of the actual computer user accessing a website.

40.    Further investigation revealed that Zangi was a computer science major with experience in reverse engineering software.

41.    KWG's investigation also revealed that Zangi's business partner, Macias Bensimhon, is the registered owner of a website "violationmonitor.com," the name of which indicates a business purpose similar to KWG's (*i.e.,* monitoring violations).  That site, although not yet fully operational, also looks strikingly similar to EmpowerNY.com's homepage.

42.    After confirming all of the above, KWG immediately shutdown Zangi's account.

43.    Shortly thereafter, on August 23, 2010, KWG received a request through the EmpowerNY website for a free-trial from a "Dick Hindyaz," supposedly from a company called J Holdings.  Upon information and belief, "J Holdings" is a fictional company used by defendant Isikov in collaboration with the other defendants to copy websites and appropriate information

10

from the copied website.  Upon information and belief, Dick Hindayz is actually defendant Isikov, a web designer with defendant Enve Web Design.  Isikov had previously set up a prototype for a "violation monitor" named business modeled on KWG's website.

44.     Upon information and belief, Zangi accessed the restricted portion of KWG's system under the false pretense that he was a legitimate property manager and potential customer.  Zangi then used that access to view and test all of KWG's proprietary features and methodology in order to form his own competing business with Bensimhon with all the same features on a strikingly similar website.  Zangi then sent his accomplice/web designer, Isikov, to access the system, again under false pretenses, in the hopes of having the features implemented on his own website in the same way as KWG's.

45.     Upon information and belief, Zangi used his access to the highly confidential portion of the EmpowerNY system to hack into a portion of the system that is available only to the members of KWG.  By unlawfully hacking into KWG's computer system, Zangi was able to misappropriate KWG's customer list, customer pricing, rate tables and software code--the most critical data belonging to KWG.

46.     Defendants' misappropriation of KWG's pricing data and customer list, combined with defendants' misuse of KWG's proprietary system and usurpation of its unique features and trade dress, is a direct threat to KWG's survival.  With all of this information, defendants can form—and upon information and belief are actually in the process of forming—an exact copy of all of EmpowerNY's unique features, something none of KWG's legitimate competitors can do. Defendants can then market that system directly to all of KWG's current customers at a price tailor-made to undercut KWG.

11

## FIRST CLAIM FOR RELIEF
## (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)(2))

47.     KWG repeats and realleges each of the allegations contained in paragraphs 1-46 above as if fully set forth herein.

48.     The conduct of defendants was in violation of 18 U.S.C. § 1030(a)(2).

49.     KWG's computer system was used in interstate commerce.

50.     Defendants intentionally accessed, and continue to access, KWG's computer system without authorization and thereby obtained, and continue to obtain, information, including trade secrets, pricing data and customer lists used in interstate commerce. Defendants committed these acts to damage KWG's future and existing business relationships and gain an unfair competitive advantage.

51.     Defendants' unauthorized access damaged, and continues to damage, the integrity and availability of KWG's data, programs, systems and information.

52.     As a proximate result of defendants' intentional, unauthorized access of KWG's computer system to obtain valuable information, KWG incurred, and continues to incur, substantial damage to its reputation and its business, and losses in excess of $10,000 in repairing and maintaining its computer system due to defendants' unauthorized access. The damage caused by the loss of customers and revenue due to the conduct of defendants is irreparable.

53.     Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi (if not actually) criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

12

## SECOND CLAIM FOR RELIEF
## (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)(4))

54.    KWG repeats and realleges each of the allegations contained in paragraphs 1-53 above as if fully set forth herein.

55.    The conduct of defendants was in violation of 18 U.S.C. § 1030(a)(4).

56.    Defendants' unauthorized access to KWG's computer system was done with the intent to defraud KWG and to obtain KWG's valuable information regarding the EmpowerNY program and website, as well as the customers and pricing data of KWG, so as to damage KWG and gain an unfair competitive advantage.

57.    Defendants' unauthorized access damaged, and continues to damage, the integrity and availability of KWG's data, programs, systems and information.

58.    As a proximate result of defendant's intentional, unauthorized access of KWG's computer system to obtain valuable information, KWG incurred, and continues to incur, substantial damage to its reputation and its business, and losses in excess of $10,000 in repairing and maintaining its computer system due to defendants' unauthorized access.  The damage caused by the loss of customers and revenue is irreparable.

59.    Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi (if not actually) criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights.  As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

## THIRD CLAIM FOR RELIEF
## (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)(5)(A)(i))

60.    KWG repeats and realleges each of the allegations contained in paragraphs 1-59

13

as if fully set forth herein.

61.     The conduct of defendants was in violation of 18 U.S.C. § 1030(a)(5)(A)(i).

62.     Defendants accessed, and continue to access, KWG's computer system without authorization through the knowing transmission of a malicious computer program or code.

63.     Defendants intentionally damaged KWG's computer system through their transmission and use of a malicious program or code.  This caused damage to KWG and provided defendants with an unfair competitive advantage.

64.     Defendants' unauthorized access damaged, and continues to damage, the integrity and availability of KWG's data, programs, systems and information.

65.     As a proximate result of defendants' knowing use of a computer program or code to gain unauthorized access to KWG's computer systems, KWG incurred, and continues to incur, substantial damage to its reputation and its business, and losses in excess of $10,000 in repairing and maintaining its computer system due to defendants' unauthorized access.  The damage caused by the loss of customers and revenue is irreparable.

66.     Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi (if not actually) criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights.  As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

## FOURTH CLAIM FOR RELIEF
## (TRESPASS TO CHATTELS)

67.     KWG repeats and realleges each of the allegations contained in paragraphs 1-66 as if fully set forth herein.

68.     Defendants were not authorized to access KWG's password-protected computer system or to view or maintain the information therein, because they obtained the password and access under false pretenses: Zangi pretended to be a legitimate property owner in need of the EmpowerNY service when, in reality, he wished to copy the system and misappropriate the confidential data stored in its database. Zangi then hacked further into KWG's highly confidential database.

69.     Defendants used, and continue to use, KWG's personal property without authorization, including its trade secrets and customer list maintained solely on KWG's computer system.

70.     Upon information and belief, defendants were not and are not capable of competing with KWG without relying on the customer lists, pricing data, and other confidential and proprietary information stolen from KWG.

71.     As a proximate result of defendants' continuing unauthorized use of KWG's computer system, trade secrets, and proprietary customer lists and pricing data, the value of KWG's personal property was, and continues to be, diminished in an amount estimated to be in excess of $1 million, the precise amount to be determined at trial.

72.     Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

## FIFTH CLAIM FOR RELIEF
## (WIRETAP ACT 18 U.S.C. § 2511)

73.     KWG repeats and realleges each of the allegations contained in paragraphs 1-72 above as if fully set forth herein.

74.     The conduct of defendants was in violation of 18 U.S.C. § 2511.

75.     Defendants have been able to gain unlawful access to KWG's computer system through a hacking method called "SQL Injection" and other methods presently unknown to KWG. Through their hacking, defendants have been able to tag requests to EmpowerNY for information with a small piece of malicious software code that can override restrictions preventing access to KWG's highly confidential database.

76.     Defendants, through the use of this malicious code, intentionally intercepted, and continue to intercept, KWG's electronic communications.

77.     Upon information and belief, defendants intentionally used the information contained in KWG's unlawfully intercepted communications to gain an unfair competitive advantage.

78.     As a proximate result of defendants' intentional, malicious and unauthorized interception and use of KWG's electronic communications, KWG suffered, and continues to suffer, damages to its business in an amount in excess of $1 million, the precise amount to be determined at trial.

79.     Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the

16

amount of $2 million.

## SIXTH CLAIM FOR RELIEF
## (THE STORED COMMUNICATIONS ACT 18 U.S.C. § 2701)

80.     KWG repeats and realleges each of the allegations contained in paragraphs 1-79 above as if fully set forth herein.

81.     The conduct of defendants was in violation of 18 U.S.C. § 2701.

82.     KWG's computer system contains a database wherein is stored important and proprietary electronic communications with respect to customers, pricing, and other aspects of KWG's business.

83.     Defendants have no authority to access the electronic communications stored by and transmitted through KWG's computer system.

84.     Upon information and belief, defendants intentionally accessed, and continue to access, KWG's electronic communications, and usurp the information contained in KWG's electronic communications for their own unfair and illegal business advantage.

85.     As a proximate result of defendants' unauthorized access, KWG suffered, and continues to suffer, damages in an amount in excess of $1 million, the precise amount to be determined at trial.

86.     Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights.  As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

17

## SEVENTH CLAIM FOR RELIEF
## (THEFT OF TRADE SECRETS)

87. KWG repeats and realleges each of the allegations contained in paragraphs 1-86 above as if fully set forth herein.

88. KWG, in the regular operation of its business, possesses numerous trade secrets including, but not limited to: (i) confidential customer lists developed by KWG at great effort and expense; and (ii) pricing models and other data regarding potential and actual customers.

89. Defendants stole, misappropriated and used KWG's trade secrets without authorization and without KWG's knowledge, to the detriment of KWG's business.

90. Defendants discovered and obtained KWG's trade secrets through improper means, including fraudulent misrepresentations as to their identities and hacking into KWG's computer system to steal customer lists and other highly confidential and sensitive data.

91. As a proximate result of defendants' improper use and discovery of KWG's trade secrets, KWG suffered and continues to suffer damage to its existing and future business relationships, in an amount in excess of $1 million, the precise amount to be determined at trial.

92. Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

## EIGHTH CLAIM FOR RELIEF
## (FRAUD)

93. KWG repeats and realleges each of the allegations contained in paragraphs 1-92 above as if fully set forth herein.

18

94.     As detailed above, Zangi made false material representations to KWG that he was a legitimate potential customer interested in the services that could be provided by KWG with respect to his single family homes.

95.     Such representations were false and Zangi intentionally made these false representations to induce KWG to provide Zangi with access to KWG's computer system, which Zangi with the assistance of the other defendants could then duplicate and hack into for the purpose of misappropriating for defendants' personal gain KWG's business, accounts, customers, and other proprietary and confidential information.

96.     Zangi misappropriated KWG's business and accounts, its customers, and other proprietary and confidential information.

97.     By means of this illicit conduct, defendants were able to set up a competing business using information and trade secrets stolen from KWG.

98.     The other defendants had knowledge of Zangi's fraudulent misrepresentations and aided and abetted Zangi in the commission of his fraudulent scheme.  All defendants actively participated in the fraud by participating in the establishment of the competing web design and competing company, in reverse engineering of the EmpowerNY system, and in assisting in the establishment of a company to compete with KWG.

99.     KWG relied on Zangi's representations and such reliance was reasonable and justifiable under the circumstances.

100.    As a proximate result of defendants' fraud, KWG has incurred and continues to incur substantial damages estimated to be in excess of $1 million, the precise amount to be determined at trial.

19

101.   Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal (if not actually criminal), and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

### NINTH CLAIM FOR RELIEF
### (MISAPPROPRIATION)

102.   KWG repeats and realleges each of the allegations contained in paragraphs 1-101 above as if fully set forth herein.

103.   Defendants surreptitiously and unlawfully misappropriated the business and accounts of KWG, its customers, and other highly confidential information.

104.   As a proximate result of defendants' misappropriation of the property, business, customer lists and other highly confidential information of KWG, as described above, KWG has incurred and continues to incur substantial damages estimated to be in excess of $1 million, the precise amount to be determined at trial.

105.   Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal (if not actually criminal), and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

### TENTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT-AS AGAINST ZANGI)

106.   KWG repeats and realleges each of the allegations contained in paragraphs 1-105 above as if fully set forth herein.

20

107.    Zangi signed and entered into the Terms of Use, which imposes certain obligations on users of KWG's service, and the Non-Disclosure Agreement.

108.    Pursuant to the Terms of Use, Zangi agreed, among other things, (1) to limit his use of KWG's service to his own internal business purpose, (2) to only allow his own employees access to the service, (3) not to copy or reverse engineer the service and any underlying software or technology, (4) not to access the service for purposes of monitoring the system's performance or functionality or for any other competitive purpose, and (5) not to misrepresent his affiliation with another person or entity or to falsely manipulate data.

109.    Pursuant to the Non-Disclosure Agreement, Zangi agreed (1) not to misuse or reverse engineer the service or underlying technology, and (2) to treat as confidential all "[p]ricing structures, service agreements and personal information stored on the EMPOWER NY servers."

110.    As a proximate result of Zangi's breach of contract, KWG has incurred and continues to incur substantial damages, which damages were foreseeable, in an amount estimated to be in excess of $1 million, the precise amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### (CONVERSION)

111.    KWG repeats and realleges each of the allegations contained in paragraphs 1-110 above as if fully set forth herein.

112.    Zangi, as aided and abetted by the other defendants, exercised dominion and control over specific property of KWG and converted the property for defendants' use, to the exclusion of KWG.

113.   Upon information and belief, Zangi converted the proprietary list of KWG's customers, KWG's pricing data and other highly confidential information.

114.   As a proximate result of defendants' unlawful conversion, as described above, KWG has incurred and continues to incur substantial damages in an amount estimated to be in excess of $1 million, the precise amount to be determined at trial.

115.   Defendants' conduct was intentional, wanton, malicious, fraudulent, quasi-criminal and shocking to the conscience, and was perpetrated in complete disregard of KWG's rights.   As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million.

## TWELFTH CLAIM FOR RELIEF
## (UNFAIR COMPETITION)

116.   KWG repeats and realleges each of the allegations contained in paragraphs 1-115 above as if fully set forth herein.

117.   As set forth above, defendants, (i) engaged in fraudulent conduct for the purpose of establishing a company that would compete with KWG; (ii) misappropriated KWG's property, customers, accounts, pricing data, and other valuable confidential and proprietary information; (iii) acted in a manner designed to cause the loss of business for KWG and to cause it other economic damage; (iv) used the resources and facilities of KWG to establish a company that would compete unfairly with KWG in the same line of business; and (v) created or placed a malicious computer program or code to access the highly confidential information stored in KWG's computer system for defendants' own pecuniary gain.

118.   The conduct of defendants constitutes unfair competition and unfair trade

22

practices.

119.    By reason of the foregoing, KWG has been damaged in an amount estimated to exceed $1 million, the precise amount to be determined at trial.

120.    In addition, the acts and conduct of defendants were malicious, oppressive, and vexatious, and were perpetrated with the intention of injuring KWG. As a consequence, each defendant should be liable to pay punitive damages in the amount of $2 million so as to deter them and others similarly inclined from repeating such conduct in the future.

## THIRTEENTH CLAIM FOR RELIEF
## (CONSTRUCTIVE TRUST)

121.    KWG repeats and realleges each of the allegations set forth in paragraphs 1-120 above, as if fully set forth herein.

122.    The Court should impose a constructive trust on all funds and assets, and on the proceeds thereof, wrongfully obtained by defendants from their unlawful conversion and misappropriation of KWG's business.

## FOURTEENTH CLAIM FOR RELIEF
## (INJUNCTIVE RELIEF)

123.    KWG repeats and realleges each of the allegations set forth in paragraphs 1-122 above, as if fully set forth herein.

124.    KWG will be irreparably damaged unless defendants are permanently enjoined from (i) continuing their unlawful access to KWG's computer system, (ii) continuing their unlawful trespass and use of KWG's property and electronic communications, and (iii) continuing their unfair competition.

125.    KWG has no adequate remedy at law.

23

126.   Therefore, the Court should issue an Order:

    A.   Permanently enjoining defendants and those acting in concert with them from engaging in the advertising or providing services of a nature similar to EmpowerNY, or any other business which relies on the information stolen and misappropriated from KWG, including the customer lists and pricing models unlawfully removed from KWG's computer system;

    B.   Permanently enjoining defendants and those acting in concert with them from accessing or using KWG's computer system; and

    C.   Permanently enjoining defendants and those acting in concert with them from engaging in any further acts of unfair competition against KWG.

WHEREFORE, KWG demands judgment, as follows:

A.   Entering an Order granting KWG a permanent injunction against defendants, as follows:

    1.   Permanently enjoining defendants and those acting in concert with them from engaging in the advertising or providing services of a nature similar to EmpowerNY, or any other business which relies on the information stolen and misappropriated from KWG, including the customer lists and pricing models unlawfully removed from KWG's computer system;

    2.   Permanently enjoining defendants and those acting in concert with them from accessing or using KWG's computer system; and

    3.   Permanently enjoining defendants and those acting in concert with them from engaging in any further acts of unfair competition against KWG;

B.    Awarding KWG compensatory damages as against defendants, jointly and severally, in an amount in excess of $1 million, the precise amount to be determined at trial, plus punitive damages as against each defendant in the amount of $2 million;

C.    Entering an order imposing a constructive trust on all funds and assets, and on the proceeds thereof, wrongfully obtained by defendants from their unlawful conversion and misappropriation of KWG's business;

D.     Awarding KWG its costs and disbursements of this suit, and reasonable attorneys' fees; and

25

E.    Awarding KWG such other and further relief as the Court deems just and proper.

Dated: New York, New York
        September 7, 2010

STAHL & ZELMANOVITZ
*Attorneys for Plaintiff KWG Partners, LLC*

By: _____
     Joseph Zelmanovitz (JZ 0085)
     Evan M. Newman (EN 2724)
     747 Third Avenue, Suite 33B
     New York, New York 10017
     (212) 826-6422

26

STAHL & ZELMANOVITZ
Joseph Zelmanovitz (JZ 0085)
Evan M. Newman (EN 2724)
747 Third Ave, Suite 33B
New York, New York 10017
*Attorneys for Plaintiff KWG Partners, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

KWG PARTNERS, LLC,                                    Case No.

                Plaintiff,

          - against -

ADAM ZANGI a/k/a ASAF ZANGI               **JURY DEMAND**
a/k/a/ OZZY ZANGI, MACIAS BENSIMHON
a/k/a DAVID GOLDSTEIN, VITALIY
ISIKOV a/k/a DICK HINDYAZ, ENVE WEB
DESIGN, and WWW.VIOLATIONMONITOR.COM,

                Defendants.
----------------------------------------------------------------x

      Plaintiff KWG Partners, LLC requests a trial by jury on all claims.


Dated: New York, New York
       September 7, 2010

                    STAHL & ZELMANOVITZ
                    *Attorneys for Plaintiff KWG Partners, LLC*

                    By:_____
                     Joseph Zelmanovitz (JZ 0085)
                     Evan M. Newman (EN 2724)
                    747 Third Avenue, Suite 33B
                    New York, New York 10017
                    (212) 826-6422